468 F.2d 430
 In the Matter of the LEHIGH AND HUDSON RIVER RAILWAY
COMPANY, Debtor.
George P. BAKER et al., Appellants,
v.
John G. TROIANO, Trustee of the Property of the Lehigh and
Hudson River Railway Company, Debtor, Appellee.
 No. 205, Docket 72-1761.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 14, 1972.
Decided Oct. 11, 1972.
 
 Paul R. Duke, Philadelphia, Pa. (Robert M. Peet, New York City, of counsel), for appellants.
 Thomas V. McMahon, New York City (Conboy, Hewitt, O'Brien & Boardman, and Jerome H. Shapiro, New York City, of counsel), for appellee.
 Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.
 FRIENDLY, Chief Judge:
 
 
 1
 This appeal raises a question concerning the scope of the summary jurisdiction of a district court presiding over a railroad's reorganization with respect to claims by that railroad against another-which, in this instance, is also in reorganization.[1]
 
 
 2
 Prior to June 21, 1970, when the petition of Penn Central Transportation Company (Penn Central) for reorganization under Sec. 77 was approved by the District Court for the Eastern District of Pennsylvania, Lehigh owed it at least $246,520.93 on "miscellaneous bills," a term referring to bills for services or facilities of various kinds but not standard interline accounts, on which Lehigh had been withholding payment. Whether this was because of lack of funds or for some other reason does not appear. On April 3, 1972, the Penn Central Trustees demanded immediate payment. After a discussion of Lehigh's precarious financial condition at an April 10 meeting of Lehigh's board of directors, on which Penn Central, as a Lehigh stockholder, was represented by a vice president, Lehigh's president wrote one of the Penn Central Trustees. He requested a guarantee that the Trustees would honor the regular monthly interline freight draft, which was normally due to be paid about April 25 and was estimated at $90,000. The Trustee responded on April 17 that Penn Central was making payment by applying the $90,000 owing to the Lehigh and Hudson River on the interline freight account for the service month of March, 1972, in reduction of the outstanding obligations which Lehigh was unable to settle in cash, and would apply any similar amounts in the future until that obligation was satisfied. Earlier, on April 14, Penn Central's comptroller had made a long-hand note on a paper headed "Journal Entry" debiting accounts payable to Lehigh and crediting accounts receivable from Lehigh with $90,000; he also wrote on the paper "To offset against amounts due from L & HR amounts owing for March Freight Settlement." On April 17, on the comptroller's instructions, the journal entry was made and then reversed in favor of a more elaborate one. The latter entry listed as debits the $90,000 estimated bill for interline freight balances, other items of indebtedness owed by Penn Central to Lehigh for car repairs, per diem charges, and the like, and two payments of $20,000 each which Lehigh had made to Penn Central on account, totaling $139,242.19; on the other side, it listed specific items owing by Lehigh to Penn Central in the same amount. The totals were offset, one against the other.
 
 
 3
 On April 11 Lehigh had drawn a draft on Penn Central, payable through the Philadelphia National Bank, for $1,247.02 for freight overcharge claims. Apparently this did not reach the bank until April 18. It was first stamped "paid" but the endorsement was later cancelled and a few days later, just when is not altogether certain, Penn Central returned the draft to Lehigh with a memorandum reading "Declined. To be offset against amount owed to Penn Central." On April 20 Lehigh drew another draft, similarly payable, for $67,585.71 for the March interline freight balances. This draft apparently was not received until April 26. Like the earlier draft, it was first stamped "paid" but in fact was not and was returned with a Penn Central memorandum stating, "Declined. To offset amounts due Penn Central."
 
 
 4
 The District Court for the Southern District of New York, on April 19, 1972, approved a petition of The Lehigh and Hudson River Railway Company under Sec. 77 of the Bankruptcy Act and entered Order No. 1, paragraphs 10 and 11 of which provided as follows:
 
 
 5
 10. All persons and all firms and corporations, whatsoever and wheresoever situated, located or domiciled, hereby are restrained and enjoined from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, * * * credits, choses in action, * * * belonging to, * * * the Debtor * * *.
 
 
 6
 11. All persons, firms and corporations, holding * * * for the account of the Debtor deposit balances or credits be and each of them hereby are restrained and enjoined from selling, converting or otherwise disposing of such collateral, deposit balances or other credits, or any part thereof, unless authorized by this Order, or from off-setting the same, or any thereof, against any obligation of the Debtor, until further order of this Court.
 
 
 7
 On Lehigh's petition Judge McLean issued an order on May 3, 1972, requiring the Penn Central Trustees to show cause why they should not be enjoined and restrained from failing to honor drafts submitted for interline freight balances or miscellaneous bills pursuant to the Accounting Rules of the Association of American Railroads and should not be required forthwith to honor the drafts of April 11 and 20. The order provided that, if the Trustees wished to assert that any setoffs were executed prior to bankruptcy, they should produce appropriate documentation at the hearing. The Trustees' answer, in addition to various admissions and denials, set forth as further defenses that "the facts relating to these accounts present a substantial adverse claim as to the Petitioner's entitlement to the amounts sought, and the Court is therefore without jurisdiction to enter the order sought in a summary proceeding" and that permission of the District Court for the Eastern District of Pennsylvania to bring "this action" against the Trustees had not been obtained. After a hearing the Judge entered an order enjoining and restraining the Penn Central Trustees from failing to honor drafts submitted for interline freight balances and overcharge claims and requiring them to pay the amount of the two drafts. The Trustees appealed and sought a stay, which another panel of this court declined to grant.
 
 
 8
 At the outset, it is well to correct a misconception resulting from Lehigh's reliance on the statement in 2 Collier, Bankruptcy p 23.05 , at 485 (1971), cited by the district court:
 
 
 9
 Where the character of the property is such that it is not capable of tangible or actual physical custody, constructive possession will suffice to confer summary jurisdiction upon the bankruptcy court regarding such property.
 
 
 10
 The discussion makes clear that this statement refers to conflicting claims of the bankrupt and others to the ownership of such intangibles; in such cases the rule with respect to choses in action is the same as that with respect to tangible property. But, as is explained in the final sentence of the subsection, id. at 489-90, and the cases cited in fn. 33, the bankruptcy court does not have summary jurisdiction to enforce a chose in action against the bankrupt's obligor, even when the bankrupt's rights seem clear. Judge Learned Hand made the distinction, with his customary clarity, in In re Roman, 23 F.2d 556 (2 Cir. 1928). Hence, if Lehigh had been in ordinary bankruptcy, the district court would plainly have lacked power to order the Penn Central Trustees to pay the drafts, however slim their defense might be.
 
 
 11
 The problem here presented is in reconciling this well-settled principle with the doctrine stated in Lowden v. Northwestern National Bank & Trust Co., 298 U.S. 160, 164-165, 56 S.Ct. 696, 80 L.Ed. 1114 (1936), that, in railroad reorganization proceedings under Sec. 77 of the Bankruptcy Act, the rule with respect to setoff is not the rigid one of Sec. 68(a) of the Act but rather "that enforced by courts of equity, which differs from the rule in bankruptcy chiefly in its greater flexibility, . . . varying with the needs of the occasion, though remaining constant, like the statute, in the absence of deflecting forces." This rather vacuous pronouncement has been given greater content by decisions in the lower courts, notably Judge Goodrich's opinion in Susquehanna Chemical Corp. v. Producers Bank & Trust Co., 174 F.2d 783 (3 Cir. 1949) (Ch. X reorganization). Provisions prohibiting setoff now are regularly included in the order approving a petition for railroad reorganization under Sec. 77, and their validity has been sustained, at least with respect to other railways and banks. In re Central R. R. of New Jersey, 273 F. Supp. 282 (D.N.J.1967), aff'd per curiam, 392 F.2d 589 (3 Cir. 1968); In re Penn Central Transp. Co., 453 F.2d 520 (3 Cir. 1971), cert. denied, Central Penn Nat. Bank v. Trustees of Property of Penn Central Transp. Co., 408 U.S. 923, 92 S.Ct. 2493, 33 L.Ed.2d 334 (1972). Since a court of equity normally has summary jurisdiction to punish for contempt of its own orders and consequently to take the less stringent step of directing compliance, it may compel the latter where, as in the cases cited, it was clear that no act of setoff had occurred prior to the bankruptcy.
 
 
 12
 It is arguable that these summary powers extend to determining factual questions as to whether the setoff had been effectively made prior to the order enjoining it. However, the only two cases cited on this point have held otherwise, In re Chicago & Northwestern Ry., 86 F.2d 508 (7 Cir. 1936); Penn Central Transp. Co. v. National City Bank, 315 F.Supp. 1281, 1285 (E.D.Pa.1970), aff'd, In re Penn Central Transp. Co., 453 F.2d 520 (3 Cir. 1972), cert. denied, Central Penn. Nat. Bank v. Trustees of Property of Penn Central Transp. Co., 408 U.S. 923, 92 S.Ct. 2493, 33 L.Ed.2d 334 (1972).[2] While neither of these cases is binding upon us, we think they were rightly decided. The injunction against setoff is strong medicine. With some insolvent railroads in truly desperate conditions it may mean that the holder of a claim, who would have had the finest kind of security in ordinary bankruptcy, will be totally deprived of it since even the priority accorded by In re New York, N. H. & H. R. R. Co., 147 F. 2d 40 (2 Cir.), cert. denied, Commonwealth v. New York, N. H. & H. R. Co., 325 U.S. 884, 65 S.Ct. 1577, 89 L.Ed. 1999 (1945), may prove to be worthless. Phrasing the question in a case like this in terms of a violation of the order approving the petition should not veil the reality that, in practical effect, the reorganization court is ordering an obligor to pay something which he has substantial grounds for contending he no longer owed when the petition was approved. A substantial contention that the setoff had been made before it was enjoined should therefore be passed upon in a plenary action, preferably before a judge not subject to the appearance-and we know here it is nothing more than that-of possible partiality inevitably attaching to the court burdened with the arduous task of keeping the debtor alive while the possibility of rehabilitation is being explored.
 
 
 13
 The remaining question is whether the Penn Central Trustees raised a substantial claim that the setoffs had been completed before the entry of the Lehigh injunctive order. We start from the proposition that "[u]nder the common law, such [mutual] debts do not extinguish one another pro tanto, either automatically or by manifestation of election by one party. Either agreement of the parties or judicial action is necessary." 6 Williston, Contracts Sec. 887E, at 543 (3d ed. Jaegar, 1962) (citations omitted). But General Mandatory Rule 1 of the Accounting Rules of the Association of American Railroads, of which Lehigh and Penn Central are members, provides:
 
 
 14
 Whenever a carrier shall refuse to pay in its entirety any interline account or balance due to another carrier upon proper presentation of draft or bill for undisputed items in accordance with existing rules and procedures of the Association of American Railroads, the carrier to which such account or balance is due shall have the right to offset any monies owed by it to such carrier refusing to pay against such unpaid interline account or balance. Said right to offset shall continue in effect until such unpaid interline account or balance has been satisfied.
 
 
 15
 Acknowledging that the debt of $246,520.93 owing to Penn Central prior to June 21, 1970, came within the definition of "any interline account or balance," the district court referred to testimony that the bills which in fact were set off were sums that had accrued since the Penn Central reorganization and that there was no evidence what these were. However, the elaborate journal entry of April 17 cites the bills by number, and it seems altogether likely that Penn Central will be able to show that they came within the language of the Accounting Rule. The district court's other point was that Penn Central's indebtedness for the March interline freight balances had not yet come into existence on April 17, since under the Accounting Rules Lehigh was not required to exchange accounts until April 18 and its draft was not drawn until April 20. But it is surely arguable that the debt came into existence at the end of March, although its precise amount was not known. It is less clear that Penn Central has a substantial contention of a valid setoff against the draft of $1,247.02 for freight overcharges, but since the larger claim must be tried in a plenary action, this may as well be included among the issues.
 
 
 16
 The order requiring payment of the drafts is therefore vacated, without prejudice to the bringing of a plenary action by the Trustees of Lehigh. While the more general injunctive language of the order may be unobjectionable, if read as limited to post-reorganization setoff of pre-reorganization claims, the Penn Central Trustees would hardly have been singled out for special treatment except for their supposed unlawful failure to honor the drafts. Since this issue must be tried in a plenary proceeding, the entire order should be and is hereby vacated.
 
 
 
 [1]
 While we do not regard this circumstance as dispositive, we note the desirability of avoiding the possibility of a clash between the two reorganization courts
 
 
 [2]
 Contrast In re Penn Central Transp. Co., 339 F.Supp. 603, 607 (E.D.Pa. 1972), where the same district judge who decided the case last cited exercised summary jurisdiction in a case in which an alleged pre-petition setoff was held not to have been legally effective, since it would have violated the Interstate Commerce Act. We take no position concerning the tenability of this distinction