FEINBERG, Circuit Judge:
The conflicting claims of two trustees in bankruptcy, a surety to the bankrupts, an obligor on a two million dollar letter of credit in favor of the surety, and three secured creditors with perfected interested in the accounts receivable of one of the bankrupts form the background for this appeal. The surety, Seaboard Surety Company (“Seaboard”), appeals from an order of Judge Edmund L. Palmieri in the United States District Court for the Southern District of New York, which affirmed an order of Bankruptcy Judge Roy Babitt denying Seaboard the right to benefit from certain setoffs in bankruptcy at least until such time as it has exhausted the proceeds of the letter of credit in the satisfaction of outstanding claims. With certain minor modifications, we affirm.
I
It is necessary to state the factual and legal history of this case in some detail. Eastern Freight Ways, Inc. (“Eastern”) and Associated Transport, Inc. (“Associated”), both of which are now in bankruptcy proceedings, were licensed common carriers of freight regulated by the Interstate Commerce Commission. Under ICC regulations, such trucking firms are allowed to self-insure against various risks subject, in some cases, to the filing of appropriate surety bonds. See 49 C.F.R. Part 1043. For many years, appellant Seaboard had written assorted surety bonds for Associated. When Associated began to run into financial troubles in 1974, these suretyships were collater-alized by $600,000 worth of negotiable instruments and other security. Shortly thereafter, subsequent to Eastern’s acquisition of control over Associated,[1] appellant agreed to act as surety for both Eastern and Associated. The two trucking companies in turn agreed to collateralize Seaboard’s obligations under surety bonds issued on behalf of either or both bankrupts, and to indemnify appellant for any and all liabilities incurred under such bonds. Following these agreements, Seaboard released the $600,000 collateral and accepted a $2,000,000 letter of credit from Chase Manhattan Bank [2] which, however, purported to cover only Seaboard’s liabilities incurred on *178 behalf of Eastern. Still later, Manufacturers Hanover Trust Company, International Harvester Credit Corporation and Fruehauf Corporation, also parties to this litigation, obtained apparently perfected security interests in Eastern’s accounts receivable and other assets, which ultimately secured some $4,750,000 in debt.
In April 1976, Eastern and Associated each filed a petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701 et seq., but each was thereafter adjudicated a bankrupt;[3] Sidney B. Gluck became the bankruptcy trustee for Eastern. Since at this time approximately 20,000 cargo claims against the bankrupts were outstanding upon which Seaboard was potentially liable, it “drew down” the full $2,000,000 proceeds of the letter of credit.[4] Many of those who had such cargo claims against the bankrupts also owed them unpaid freight charges. After drawing down the $2,000,000, Seaboard began notifying the cargo claimants that they should deduct any unpaid freight charges owed to a particular bankrupt from the amount of the cargo claim against that bankrupt. Seaboard’s notice stated that, in any event, it would not be liable for more than the difference between these amounts.
In September 1976, Eastern’s trustee petitioned the bankruptcy judge for an order which would, among other things, require Seaboard to account for all cargo claims pending or paid and the use of the proceeds of the letter of credit, and would enjoin Seaboard from further interfering with the administration of the bankrupt’s estate. Seaboard in turn asked the bankruptcy court to declare that it was entitled to use unpaid freight charges as setoffs against the cargo claims. In November 1976, Bankruptcy Judge Babitt issued a temporary restraining order against Seaboard pending further litigation and ordered Seaboard to render the requested accounting. In various colloquies in open court leading up to this order, all parties agreed that the setoff issue should be settled in one litigation before the bankruptcy judge. Pursuant to these discussions, Eastern’s trustee commenced an adversary proceeding[5]
[6] in the bankruptcy court against Seaboard, the three secured creditors referred to above, Chase Manhattan Bank and the Associated trustee, Thomas J. Cahill.
The Eastern trustee’s complaint sought, in part, (1) a declaration that Seaboard was not entitled (a) to any setoffs whatsoever because of the prior perfected assignment of the accounts receivable; (b) to any set-offs that a cargo claimant had waived by paying in full to Eastern’s trustee the freight charges owed the bankrupt; or (c) to any setoff based on a freight charge not arising out of the same transaction giving rise to the cargo claim; and (2) a declaration (a) that Seaboard could apply the proceeds of the letter of credit only against Eastern cargo claims and (b) that Seaboard would have no right to setoffs until such proceeds were properly exhausted.[6] After *179 the other defendants had answered,[7] Seaboard moved to dismiss the first cause of action described above (and related cross-claims) for failure to state a claim upon which relief could be granted, and to dismiss the second for lack of summary jurisdiction in the bankruptcy court. Seaboard also sought a declaration that it was entitled to the contested setoffs.
In a lengthy opinion filed in April 1977, Bankruptcy Judge Babitt granted substantial relief to the trustee. Although the bankruptcy judge did not reach the merits of the issues raised by the first cause of action, he held “that until the proceeds of the letter of credit are exhausted, no right of set off can be claimed by Seaboard, and the trustee is entitled to a declaratory judgment to that effect.” Judge Babitt also rejected Seaboard’s contentions that the bankruptcy court had no jurisdiction over the allocation of the proceeds, since Seaboard had submitted itself to that jurisdiction by seeking affirmative relief on its claimed right to setoff, “an issue inextricably intertwined with the existence of the proceeds of the letter of credit . . . .” The bankruptcy judge also enjoined[8] Seaboard from soliciting setoffs until further order of the court and directed it to render an accounting of the cargo claims. Finally, Judge Babitt ordered an evidentiary hearing, to be stayed pending determination of an appeal, on the issue of allocating the proceeds of the letter of credit.
Seaboard appealed to the district court; in October 1977, Judge Palmieri affirmed the bankruptcy judge in a thorough opinion. The district judge agreed that Seaboard had no right to any equitable setoffs until the proceeds of the letter of credit were exhausted, and that the bankruptcy court had jurisdiction to decide how the proceeds were to be applied. The district court based the latter holding, however, not on the bankruptcy judge’s rationale of seaboard’s implied consent to jurisdiction, but rather on the theory that determination of the proper allocation of the proceeds of the letter of credit “is a necessary prerequisite to the final resolution of the rights of the parties with respect to the setoffs, over which the court clearly has jurisdiction.” Lastly, Judge Palmieri concluded that in light of the complex factual and legal issues posed by the conflicting claims of the secured creditors regarding the setoffs, Seaboard’s motion to dismiss the trustee’s first cause of action for failure to state a claim should be denied.
II
The parties reiterate these contentions in this court, and focus particularly on whether Seaboard’s right to benefit from the set-offs is properly conditioned on exhaustion of the proceeds of the letter of credit and whether the bankruptcy court has jurisdiction to determine allocation of those proceeds. We turn to the setoff issue first, since its resolution affects our analysis of the jurisdictional point.
As all parties and both judges recognized, our starting point is Judge Friendly’s opinion, captioned In re Yale Express Systems, Inc., 362 F.2d 111 (2d Cir. 1966). In that case, a surety for a trucking company in reorganization under Chapter X, 11 U.S.C. §§ 501 et seq., was found to be entitled to setoffs similar to those sought here, provided that on remand the surety could demonstrate that the setoffs “would be compatible with the requirements of the reorganization . .” Id. at 117. Seaboard, which is concededly a surety to the bankrupt truck *180 ing firms,[9] contends that Yale Express controls in this straight bankruptcy proceeding, where there are no rehabilitative concerns as were present in Yale Express. While Judge Friendly did opine that “had this been an ordinary bankruptcy, it would have been error to deny the applications for set-off,” id. at 116, a closer scrutiny of the Yale Express analysis demonstrates that Seaboard is not entitled to such setoffs, at least until the proceeds of the letter of credit are exhausted.
Seaboard argues that Yale Express stands for the proposition that “the surety of an insolvent debtor is entitled to have a creditor apply a debt owing to the debtor to satisfaction. of his claim . . . .” Id. But the principle just stated is an equitable one, id.; see Restatement of Security § 133, Comment c (1941), especially when applied by the bankruptcy court, which is a court of equity. See Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) (equitable application of seemingly mandatory statutory rule); Pepper v. Litton, 308 U.S. 295, 304-05, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Thus, the crucial question is whether a surety who has dollar for dollar recourse against its principal, albeit an insolvent one, is equitably entitled to setoffs existing between the principal and the principal’s debtors. Cf. Tucson House Constr. Co. v. Fulford, 378 F.2d 734, 737 (9th Cir. 1967). We think that this question was properly answered in the negative here.
 Normally, a surety to an insolvent principal is without recourse against the principal except insofar as the surety may ultimately receive some dividend from the bankruptcy proceedings. If such a surety is forced to pay in full a claim against a bankrupt principal without being permitted to deduct from the amount to be paid the freight charge due from the claimant to the principal, and the claimant then pays the freight charge to the bankrupt’s estate, the bankrupt benefits at the surety’s expense. Such an inequitable result “is contrary to the fundamental relation between the [principal and surety].” United States ex rel. Johnson v. Morley Constr. Co., 98 F.2d 781, 790 (2d Cir.), cert. denied, 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed.2d 421 (1938), quoted with approval in Yale Express, supra, 362 F.2d at 115. It therefore follows that the surety to a bankrupt should ordinarily be allowed to take the type of setoff sought here. In effect, this creates an equitable lien in favor of the surety over the claimant’s natural security against the bankrupt, that is, the right to setoff. Such a rule prevents the bankrupt’s unjust enrichment at the expense of the surety.
Here, however, the surety has dollar for dollar recourse against the bankrupt principal in the form of the proceeds of the Chase Manhattan letter of credit. Until Seaboard has properly paid out two million dollars worth of cargo claims, the principal cannot benefit at Seaboard’s expense, because the latter will retain one dollar of proceeds for every dollar of claim paid. Since it appears that here the principal is “able [up to $2,000,000] to respond to the surety’s claim over against him for indemnity,” United States ex rel. Johnson v. Morley Constr. Co., supra, 98 F.2d at 790, the rationale for allowing a surety to compel use of an existing setoff does not arise until the proceeds are exhausted. See Clark Car Co. v. Clark, 48 F.2d 169, 170 (3d Cir. 1931). If and when Seaboard exhausts those proceeds, it may well be entitled to the benefit of the setoffs, subject to such priority, if any, as might be accorded to the adverse claims of the secured creditors.[10] But since *181 Seaboard is currently protected and since it is not clear that the proceeds of the letter of credit will ever be exhausted,[11] both the bankruptcy judge and the district judge correctly held that Seaboard had not established a present right to the setoffs.[12]
Seaboard argues that this view inequitably deprives it of the security of the set-offs to which it was otherwise entitled, simply because it obtained a letter of credit in addition to that security. While this claim has superficial appeal, the right to setoff is inadequate security at best whenever the setoff (the freight charge) is less than the claim against the principal (the cargo claim). Thus, a surety will usually benefit by obtaining collateral to cover its potential liabilities. Indeed, if Seaboard had been fully collateralized, the setoff issue would never have arisen. Seaboard was better off with the letter of credit than with the limited security of the setoffs, which the letter of credit, until exhausted, was designed to replace. Under this view, it is not unfair to require Seaboard to utilize the greater security it obtained.
Seaboard also argues that if it is compelled to wait to use the setoffs, it will be unfairly harmed by the order of the bankruptcy court. This could result from the following scenario: The letter of credit is construed to cover claims against both Eastern and Associated, which are estimated substantially to exceed $2,000,000. As Seaboard pays these claims, various claimants fail to utilize their own outstanding liability for freight charges to the bankrupt trucking companies as a setoff against the trustees of those companies, and pay the freight charges in full to the trustees. Thereafter, when Seaboard’s payment of cargo claims exceeds $2,000,000, it will lose money on all setoffs not theretofore utilized by the claimants, if appellees are correct in their assertion that such payments in full by cargo claimants waive the surety’s setoff rights.[13] Without passing on any of these contentions, we note that this possibility exists. Moreover, we were informed at oral argument that the trustee has been paying over the accounts receivable as they are collected to the secured creditors, thereby enhancing the potential for harm to appellant. We therefore modify Bankruptcy Judge Babitt’s order to direct the trustee to collect the accounts receivable, but to hold in a special account pending final resolution of this litigation such sums as are collected from shippers who have asserted claims *182 against Seaboard. Such a procedure will help protect appellant by allowing an adjustment of monies and claims between the surety, the bankrupt, and the secured creditors, should Seaboard eventually demonstrate its entitlement to use the setoffs in one form or another.
Ill
We turn now to the jurisdictional issue raised by the litigants: Does the bankruptcy court have the power to decide in a summary proceeding whether the letter of credit covers claims against Eastern only or claims against Associated as well?[14] As indicated above, the district court held that there was jurisdiction over this issue of allocation of the proceeds of the letter of credit because that question was necessarily intertwined with the setoff issue, over which the bankruptcy court clearly had jurisdiction. Appellant disputes this conclusion and also rejects the various other theories proffered by appellees to justify summary jurisdiction. We now turn to these contentions.
Jurisdiction of the bankruptcy courts is generally defined by sections 2 and 23 of the Bankruptcy Act, 11 U.S.C. §§ 11 and 46. These sections taken as a whole limit summary jurisdiction to matters relating to the administration of the bankrupt’s estate, property in the court’s constructive or actual possession, and other bankruptcy issues to to which the parties expressly or impliedly consent. See, e. g., Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Harris v. Avery Brundage Co., 305 U.S. 160, 164, 59 S.Ct. 131, 83 L.Ed. 100 (1938); see generally 2 Collier on Bankruptcy H 23.02-.08 (14th ed. 1976). In determining whether a particular controversy falls within the bankruptcy court’s summary powers, the courts have recognized that Congress has not rigidly delineated the boundaries of jurisdiction. See Katchen v. Landy, supra, 382 U.S. at 328, 86 S.Ct. 467; see also 1 Collier on Bankruptcy 12.04, at 147 (14th ed. 1974). Rather, “bankruptcy court jurisdiction has been expanded to meet the exigencies of particular fact situations,” Law Research Service, Inc. v. Crook, 524 F.2d 301, 314 (2d Cir. 1975), and “the exact scope of summary proceedings in bankruptcy . . . is a matter to be determined by [reference to case law] after due consideration of the structure and purpose of the Bankruptcy Act as a whole . . . .” Katchen v. Landy, supra, 382 U.S. at 328, 86 S.Ct. at 472.
Appellant urges that the trustee must invoke plenary proceedings here because Seaboard holds “possession of the proceeds of the letter of credit as an adverse claimant with a substantial and good faith claim . . . .” If the trustee sought to litigate the surety’s right to retain collateral in it possession, then appellant’s contention would be persuasive. See Jaquith v. Rowley, 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620 (1903). However, the trustee has expressly denied making a claim to the proceeds of the letter of credit. Moreover, the allocation issue was raised only because of its pivotal importance to the setoff issue. As our analysis in Part II above demonstrates, the right to setoff depends on whether the surety has properly exhausted the $2,000,000 collateral, which in turn may depend upon whether the letter of credit protects Seaboard on claims. against both bankrupts or on claims against Eastern only. The setoff issue was clearly within the summary jurisdiction of the bankruptcy court, because the trustee had constructive possession of, and title to, the accounts receivable for freight charges, see section *183 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5). This justified the trustee’s invocation of summary jurisdiction over any attempt to reduce the amount of the collectible accounts receivable by means of setoffs, whether asserted by a creditor or by the surety. See Cumberland Glass Mfg. Co. v. DeWitt & Co., 237 U.S. 447, 455, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); 2 Collier on Bankruptcy K 23.05[4], at 489 (14th ed. 1976).
It follows that the bankruptcy judge had jurisdiction to adjudicate the allocation issue insofar as it was determinative of the setoff issue. Accordingly, we hold that the allocation issue was a “controvers[y] relating to property over which [the bankruptcy court had] actual or constructive possession.” Katchen v. Landy, supra, 382 U.S. at 327, 86 S.Ct. at 471, quoting Thompson v. Magnolia Petroleum Co., supra, 309 U.S. at 481, 60 S.Ct. 628. Moreover, the overriding policy of the Bankruptcy Act to administer a bankrupt’s estate with expedition[15] is best served here by resolving the thoroughly interrelated and interdependent allocation and setoff issues in a single summary proceeding before the bankruptcy judge. See O’Dell v. United States, 326 F.2d 451, 455-56 (10th Cir. 1964); cf. James Talcott, Inc. v. Glavin, 104 F.2d 851, 853 (3d Cir.), cert. denied, 308 U.S. 598, 60 S.Ct. 130, 84 L.Ed. 501 (1939).
We also note that Seaboard’s filing of a proof of claim against the Eastern estate seemingly justified the bankruptcy court’s assertion of jurisdiction here. Cf. Chase Nat. Bank v. Lyford, 147 F.2d 273, 277 (2d Cir. 1945). At least where the claim against the estate exceeds the amount of the contested setoff, it appears that the filing of a proof of claim constitutes implied consent to summary jurisdiction over the setoff issue. See 4 Collier on Bankruptcy 168.20[4], at 946 (14th ed. 1978). Furthermore, since the size of Seaboard’s unsecured claim against Eastern will ultimately depend upon the allocation of the proceeds of the letter of credit, see note 11 supra, the bankruptcy court has jurisdiction to hear the allocation issue which is determinative of the value of the security held by Seaboard as regards Eastern. See Rule of Bankruptcy Procedure 306(d); section 57(h) of the Bankruptcy Act, 11 U.S.C. § 93(h).[16]
Finally, appellant contends that we should direct the bankruptcy judge to decline jurisdiction in order to avoid the appearance of institutional bias in favor of a trustee administering the estate. Whatever strength the argument might have in other contexts, it is unsound here. The Eastern and Associated trustees have taken contrary positions on the allocation issue. Moreover, Seaboard’s reliance on In re Lehigh and Hudson River Ry. Co., 468 F.2d 430 (2d Cir. 1972) is misplaced. That case dealt with the question whether the bankruptcy court should exercise summary jurisdiction to order “an obligor to pay something which he has substantial grounds for contending he no longer owed when the [bankruptcy] petition was approved.” Id. at 434. This case does not involve a trustee’s attempt to recover assets held by the surety, and the considerations involved in Lehigh and Hudson River Ry. Co. are inapplicable.
*184 Subject to the modification discussed in Part II concerning the collection of the accounts receivable, the order of the district court is affirmed. The bankruptcy judge should commence hearings on the allocation of proceeds issue as soon as practicable so that all of the setoff issues — including the priority claims of the secured creditors, see note 10 supra — may be rapidly decided and the collection and distribution of the estate may proceed with expedition.

. By 1974, Eastern owned over 45 percent of Associated’s outstanding stock and was granted temporary authority by the ICC to assume control of Associated’s operations.

. We are informed that Manufacturers Hanover Trust Company has a 25 percent interest in this letter of credit.

. Eastern apparently reentered Chapter XI in June 1976, but was again adjudicated a bankrupt in August of that year.

. In addition to the outstanding cargo claims, Seaboard is potentially liable for other claims as well, including workmen’s compensation claims. See note 9 infra. For convenience, we will ordinarily refer to the claims against Seaboard as cargo claims.

. See Rules of Bankruptcy Procedure 701-82. Rule 701 provides:
The rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding.

. The complaint also sought damages for Seaboard’s alleged conversion of the bankrupt’s accounts receivable in the form of setoffs already taken. This cause of action was dismissed, and that decision is not appealed here.

. Many of the answers contained cross-claims against Seaboard which raised the same issues as the main complaint.

. See Rule of Bankruptcy Procedure 765, which provides:
Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings except that a temporary restraining order or preliminary injunction may be issued on application of a trustee, receiver, or bankrupt without compliance with subdivision (c) of that rule. When security is required under subdivision (c) of that rule and is given in the form of a bond or other undertaking, Rule 925 governs its enforcement against the surety thereon.

. Seaboard issued bonds for personal injury, cargo and workmen’s compensation claims against Eastern and Associated. Since Seaboard has undertaken these obligations, upon which the two trucking firms were primarily liable, Seaboard was clearly acting as a surety. See Restatement of Security § 82 (1941).

. The secured creditors claim that the rights of the perfected assignees of the accounts receivable are prior to and superior to the surety’s equitable lien over the setoffs. We do not address this point nor do we reach the other questions raised in the trustee’s first cause of action. We agree with Judge Palmieri, however, that there are apparently material issues of fact in dispute which may well be determina *181 tive of the legal questions involved, and that Seaboard’s motion to dismiss this first cause of action was therefore properly denied.

. If the letter of credit is held to protect Seaboard as to Eastern claimants only, the proceeds of the letter of credit will apparently be more than ample to cover Seaboard’s approximately $700,000 in liabilities on behalf of Eastern.

. The result here is arguably consistent with the equitable dictates of the marshaling of assets doctrine recognized in bankruptcy. Thus, where one creditor (Seaboard) can reach two funds of the debtor (the proceeds of the letter of credit and the accounts receivable for freight charges in the form of setoffs) and another creditor (e. g;, Manufacturers Hanover) can only reach one of those two funds (the accounts receivable), a bankruptcy court will require the first creditor initially to attempt to satisfy his claim out of the asset unavailable to the second creditor. See In re Beacon Distributors, Inc., 441 F.2d 547, 548 (1st Cir. 1971).

. Appellees contend that the cargo claimant waives his right to setoff, see section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108(a), by choosing to pay the freight charge in full and pursue the surety for the full amount of the cargo claim. See 4 Collier on Bankruptcy H 68.07 (14th ed. 1978). If such payments in full here waive the cargo claimants’ rights (a point upon which we express no opinion), it perhaps follows that the surety’s right to setoff is also waived because the surety’s rights are arguably derivative of the cargo claimants’ rights. See United States ex rel. Johnson v. Morley Constr. Co., supra, 98 F.2d at 790:
However, it is only after the surety pays the creditor that he is subrogated to all the creditor’s securities, and that would be a condition here, except that the surety cannot pay the debt without losing the security, for it consists only of the creditor’s power to defeat the counterclaim by using his claim to cancel it. Therefore to exact of the surety the normal condition of paying the debt, would be to destroy the security, and it follows that he must be allowed to set it up himself.
See also section 57(i) of the Bankruptcy Act, 11 U.S.C. § 93(i).

. Basically, summary proceedings are expedited and simplified judicial proceedings before the bankruptcy judge over matters relating to the administration of the bankrupt’s estate and property in the court’s possession. If such jurisdiction does not exist and an adverse party is unwilling to consent to summary jurisdiction, then the trustee must initiate more formalized plenary proceedings in the appropriate state or federal court. Significantly, there are no rights to a jury in summary proceedings, except as provided by section 19 of the Bankruptcy Act, 11 U.S.C. § 42. See generally 2 Collier on Bankruptcy 23.02 (14th ed. 1976).

. See Katchen v. Landy, supra, 382 U.S. at 328-29, 86 S.Ct. 467.

. Our result here is strongly supported by appellant’s express consent to litigate the setoff issue before the bankruptcy court. There is much force to appellees’ arguments that such consent should be dispositive of appellant’s jurisdictional objection, because, as already stated, the setoff issue depends upon the proper exhaustion of the proceeds of the letter of credit. Furthermore, as Eastern’s trustee points out, it is somewhat anomalous for appellant to concede that the bankruptcy court could decide one side of the question but not the other. Indeed, “[ojnce consent to the summary jurisdiction of the bankruptcy court appears, that jurisdiction generally will be retained for the determination of all the claims of the parties and for the enforcement of all their rights against each other.” 2 Collier on Bankruptcy II 23.08[1], at 536 (14th ed. 1976). Nor is this a case in which the issues are “entirely disconnected” so that consent as to one matter might not be considered consent as to another matter. See Daniel v. Guaranty Trust Co., 285 U.S. 154, 161, 76 L.Ed. 675 (1932).