**In re Willie J. BROWN, Debtor.**

**Stanley HOFFMAN, et al., Plaintiffs,**

**v.**

**Willie J. BROWN, et al., Defendants.**

**Bankruptcy No. 84–BX–1617.
Adv. No. 84–0389B.**

United States Bankruptcy Court,
D. Maryland.

Dec. 30, 1985.

William L. Hallam, Richard M. Kremen, Semmes, Bowen & Semmes, Baltimore, Md., for plaintiff, Richard M. Kremen, Bankruptcy Trustee of the Estate of Albert Blank.

Nicholas J. Pistolas, Baltimore, Md., for plaintiffs, Stanley and Minnie Hoffman.

Peter B. Turney, Baltimore, Md., for defendants, Willie J. Brown and Cleo H. Brown.

## ORDER REMANDING PROCEEDINGS TO THE CIRCUIT COURT FOR BALTIMORE CITY

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter comes before the United States Bankruptcy Court for the District of

Maryland at Baltimore upon the demand for jury trial [P. 4] filed by the defendants Willie J. Brown and Cleo H. Brown, having been removed here from the Circuit Court for Baltimore City. For the reasons stated, this Court finds that it may not conduct jury trials and will therefore abstain and remand these proceedings to the state court from whence they were removed.

FINDINGS OF FACT

1. On August 30, 1984, a petition to foreclose a mortgage was filed in the Circuit Court for Baltimore City in Case No. 84243040 by Stanley Hoffman and Minnie Hoffman against Willie J. Brown and Cleo H. Brown, his wife, t/a "Brown Contracting." An amended petition was filed on September 26, 1984, reflecting the joinder as a petitioner of Richard Kremen, trustee in bankruptcy of Albert Blank, t/a Equitable Mortgage Company in Case No. 83–B–1582.

2. The property secured by the mortgage in the amount of $9,000 was identified as 5341 Gist Avenue, located in the City of Baltimore.

3. On September 28, 1984, an amended decree of sale was entered [Kaplan, J.].

4. On October 22, 1984, Willie J. Brown and Cleo H. Brown filed a counterclaim for injunction and money judgment against the petitioners, Nicholas J. Pistolas, their counsel, Richard M. Kremen, trustee in bankruptcy of Albert Blank, and the Equitable Mortgage Co., Inc. The counterclaim asserted that the mortgage in question was improperly granted in violation of 15 U.S.C. §§ 1601 et seq. and Title 12 of the Maryland Commercial Law Code.

5. Four days later, Willie James Brown filed a voluntary Chapter 13 bankruptcy petition in this Court on October 26, 1984. The case was converted to a proceeding under Chapter 7 by consent of the debtor on April.11, 1985.

6. On November 16, 1984, Richard M. Kremen, Esq., trustee in bankruptcy of the estate of Albert Blank, No. 83–B–1582, filed the instant application for removal of the foreclosure proceeding from the Circuit Court for Baltimore City to this Court.

7. On November 23, 1984, Willie J. Brown and Cleo H. Brown filed their answer to the application [P. 2] in which they consented to the jurisdiction of this Court. Answer, Paragraph 9.

8. On November 28, 1984, Willie J. Brown and Cleo H. Brown filed a demand for jury trial [P. 4] in this case.

CONCLUSIONS OF LAW

1. As presently constituted, U.S. bankruptcy courts have no authority to conduct jury trials.

2. The Bankruptcy Reform act of 1978, P.L. 95–598, which expressly authorized bankruptcy courts to conduct jury trials in its enactment of 28 U.S.C. § 1480 (1978), was declared invalid as an unconstitutional delegation of Article III powers to an Article I court in the opinion of the U.S. Supreme Court in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

3. Justice Brennan, author of the plurality opinion, wrote in relevant part that "[the Bankruptcy Reform Act of 1978] vests all 'essential attributes' of the judicial power of the United States in the 'adjunct' bankruptcy court ... [T]he bankruptcy courts exercise all ordinary powers of district courts, including the power to preside over jury trials ... We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissably removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts." *Northern Pipeline*, 458 U.S. at 85–87, 102 S.Ct. at 2878–80, 73 L.Ed.2d at 624–25.

4. Upon the failure of Congress to timely enact corrective legislation to reconstitute the bankruptcy court system, the Judicial Conference of the United States promulgated an Emergency Rule which was

adopted by all the circuits on December 24, 1982, the effective date of the *Northern Pipeline* decision. Among other things, the Emergency Rule expressly prohibited bankruptcy courts from conducting jury trials. Model Emergency Bankruptcy Rule (d)(1)(D) (West pamphlet, 1983).

5. To further compound the confusion, a new set of proposed bankruptcy rules promulgated by the U.S. Supreme Court became effective on August 1, 1983. Among them was Bankruptcy Rule 9015 which provides in relevant part as follows:

(a) Trial by Jury.

Issues triable by right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

The quoted rule was promulgated pursuant to the provisions of the invalidated 1978 law, specifically 28 U.S.C. § 1480, now defunct.

6. Finally, in July, 1984, President Reagan signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984 ["B.A.F.J.A."] P.L. 98–353, the long-awaited Congressional response to the *Northern Pipeline* decision. The new law vested original and exclusive bankruptcy jurisdiction in the district courts but provided that they may refer cases and proceedings to bankruptcy judges. 28 U.S.C. § 157(a)....

7. Additionally, the new law distinguishes between so-called "core" and "non-core" proceedings, indicating generally that the bankruptcy judge may hear and finally determine core matters, but may only make recommended findings of fact and conclusions of law in non-core matters, which a district judge may either accept or reject. 28 U.S.C. 157(b)(1), (c)(1), (2).

8. The instant counterclaim is a "core proceeding" arising under Title 11 of the U.S. Code which this Court may hear and determine, and in which this Court may enter appropriate orders and judgments, according to 28 U.S.C. § 157(b)(2)(B), (C), (K) and (O):

(2) Core proceedings include but are not limited to—

(B) allowance or disallowance of claims against the estate ...;

(C) counterclaims by the estate against persons filing claims against the estate;

(K) determination of the validity, extent, or priority of liens; [and]

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holders relationship, except personal injury tort or wrongful death claims.

9. The legislative history of B.A.F.J.A. supports the analogy between core proceedings under the current law and summary jurisdiction exercised by bankruptcy courts in the pre-Code days under the Bankruptcy Act of 1898, as amended. The Senate Conference report on the 1984 amendments (130 Cong. Rec. S8887–8900, daily ed. June 29, 1984) states that bankruptcy judges should exercise summary jurisdiction over core proceedings pursuant to 28 U.S.C. § 157(b).

10. In *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), decided under the Bankruptcy Act of 1898, as amended, the U.S. Supreme Court held that issues which were traditionally legal as opposed to equitable in nature, but which were necessary to the administration of the bankruptcy estate, became subject to the equitable powers of the bankruptcy referee and were within the traditional summary jurisdiction of the bankruptcy court. Thus, under the old Act, there was declared to be no right to a jury trial in the bankruptcy court even if the same matter could be tried by a jury elsewhere. *See also In re Graham*, 747 F.2d 1383, 1387–89 (11th Cir.,1984).

11. While the Seventh Amendment to the U.S. Constitution guarantees parties the right to a trial by jury in matters at law, case law has held that bankruptcy courts are courts of equity. *Pepper v.*

*Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Young v. Higbee Co.,* 324 U.S. 204, 65 S.Ct. 594, 599, 89 L.Ed. 890 (1945); *Columbia Foundry Co. v. Lochner,* 179 F.2d 630 (4th Cir.1950); *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

12. The sole provision in B.A.F.J.A. relative to trial by jury is found in 28 U.S.C. § 1411, which provides:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

13. Therefore, based upon *Northern Pipeline* and prior case law which denied the right to trial by jury in the bankruptcy court, and in light of the absence of express statutory authorization therefor in B.A.F.J.A., this Court concludes that it is powerless to conduct jury trials. *Accord, see 1 Collier on Bankruptcy* ¶ 3.01[7][b][i] (15th ed. 1985); Sabino, *Jury Trials in the Bankruptcy Court: A Continuing Controversy,* 90 Comm.L.J. 342–345 (1985).

14. The debtors would have been entitled to a trial by jury on the counterclaim in either the Circuit Court for Baltimore City, where the mortgage foreclosure was originally filed, or in the U.S. District Court for the District of Maryland.

15. Under the applicable case law of Maryland, the Browns' counterclaim is in the nature of a compulsory counterclaim, because it not only arises out of the mortgage foreclosure action, but is a necessary defense to it, which if not raised may be barred in a later action by operation of law, including the doctrines of mootness, waiver, estoppel, and *res judicata. See, e.g., Alvey v. Alvey,* 225 Md. 386 171 A.2d 92 (1961).

16. The Maryland Secondary Mortgage Loan Law provides in § 12–413 of the Md. Com.Law. Code for the recovery of civil penalties against lenders who knowingly violate provisions of the subtitle. The Browns' counterclaim is therefore a legal cause of action by reason of the potential recovery of money damages.

17. The mortgage foreclosure itself, however, which is the main cause of action out of which the counterclaim arose, is an action in equity. The mixture of legal and equitable causes of action in one proceeding creates the difficult problem of determining whether a trial by jury is available to the counterclaimants. With respect to Maryland law on the subject under the recently-adopted rules of procedure, it has been written that:

The absence of a formal division between law and equity may give rise to initial confusion over whether a party has the right to a jury trial on a particular claim. Because the mechanical separation of legal issues from equitable ones is no longer required by pleading rules, the court must look to the historical nature of the claim or issue to determine whether the right to trial by jury exists, or on occasion to the statutory intent in connection with rights created by statute. If the issue is one which historically was tried at law before a jury and a jury trial is properly demanded, the issue will be tried to the jury. Likewise, traditionally equitable issues are decided by the court. If all claims in an action are legal in nature, the entire action is decided by a jury, when properly demanded. If all claims are equitable in nature, the entire action is decided by the judge.

More difficult problems arise when both legal and equitable issues are combined in the same action, either because the plaintiff has combined legal and equitable claims in the complaint or because a mixture of claims has been raised by counterclaim, cross-claim or a third-party claim. If the legal issues are wholly independent and separable, it is a simple matter to separate them for trial by a jury. Where factual issues are common to some or all of the claims, however, the order in which the claims are

decided becomes important because a factual determination by one method may preclude determination of the same issue by the other method.

The federal body of case law, which has pursued a policy of jealously protecting the jury right, will be persuasive authority when the Maryland appellate courts are faced with the question of the order in which legal and equitable issues are tried when a jury trial is demanded. In federal court, the legal issues are tried to the jury first, and the court then resolves any equitable issues which may remain thereafter. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469 [82 S.Ct. 894, 8 L.Ed.2d 44] (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 [79 S.Ct. 948, 3 L.Ed.2d 988] (1959). Although this may tend to expand the use of a jury on certain issues which, when law and equity were separate, would have been tried to the court, to reverse the order and permit the court to try the equitable claims first could result in an intrusion on the right to trial by jury.

Niemeyer and Richards, *Maryland Rules Commentary,* p. 159 (1984); Md. Rule 2–325.

18.  The constitutional right to trial by jury of claims brought under the Truth-In-Lending Act, 15 U.S.C. § 1631, *et. seq.,* has been expressly upheld in the Fourth Circuit. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978), *cert. den.* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

19.  In the instant case, the right to trial by jury may not be denied to the counterclaimants merely because they are the prosecuting parties who prayed a jury trial. While it was the defendants in the truth-in-lending action who sought the jury trial in *Barber,* the holding that a jury trial was available turned not upon the party status of the movants, but rather upon the legal nature of the cause of action, including the civil remedy of damages. *Id.* at 225.

20.  The fact that a trial by jury is sought on a counterclaim arising out of a foreclosure action is not a sufficient basis upon which to deny the right to a jury trial,

because the trial may be structured or bifurcated to separate legal (jury) and equitable (non-jury) aspects. F.R.Civ.P. 13(i), 42. *See Quinn v. Bowmar Pub. Co.,* 445 F.Supp. 780 (D.Md.1978).

21.  Ordinarily, when litigants in an adversary complaint commenced in the bankruptcy court are found to be entitled to a jury trial which was unavailable here, the matter would be referred to the U.S. District Court.

22.  However, the instant case, which was removed here from a state court, and which involves a mortgage foreclosure proceeding indigenous to a state forum requiring the application of state law remedies, presents issues of comity and deference to state jurisdiction not usually present in an adversary proceeding which is routinely commenced in this Court.

23.  Likewise, considerations of fairness, judicial economy and the prevention of needless expense dictate that the instant controversy not be transferred to the U.S. District Court.

24.  Despite the fact that a right to trial by jury exists in the U.S. District Court on the counterclaim as it is based upon the Federal Truth-in-Lending Act, the most practical procedure would be to remand the case to the Circuit Court for Baltimore City which is fully clothed with the jurisdiction and the expertise to determine the state foreclosure proceeding and the counterclaim which is based upon both state and federal law. In the absence of compelling reasons which are absent here, Federal courts have no business interposing their jurisdiction in what are essentially concerns of the state courts, including mortgage foreclosures.

25.  For these reasons, this Court will exercise its discretion to abstain from further jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(c)(2) and will remand it to the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1452(b).

IT IS SO ORDERED.