In the Matter of CENTURY BRASS PRODUCTS, INC., Debtor.

CENTURY BRASS PRODUCTS, INC., Debtor-In-Possession, Plaintiff,

v.

MILLARD METALS SERVICE CENTER, INC., Defendant.

CENTURY BRASS PRODUCTS, INC., Debtor-In-Possession, Plaintiff,

v.

MILLARD CONTROLLED METALS, INC., Defendant.

CENTURY BRASS PRODUCTS, INC., Debtor-In-Possession, Plaintiff,

v.

COVAC, INC., Defendant.

Bankruptcy No. 2–85–00197.
Adv. Nos. 2–85–0189, 2–85–0190 and 2–85–0191.

United States Bankruptcy Court, D. Connecticut.

March 18, 1986.

Michael A. Zizka, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for plaintiff.

Alan S. Dambrov, Cooley, Shrair, Alpert, Labovitz & Dambrov, P.C., Springfield, Mass., for defendants.

MEMORANDUM OF DECISION ON MOTION TO DETERMINE WHETHER PROCEEDINGS ARE CORE PROCEEDINGS OR ARE PROCEEDINGS OTHERWISE RELATED TO A CASE UNDER TITLE 11

ROBERT L. KRECHEVSKY, Chief Judge.

I.

Century Brass Products, Inc. (Century), the debtor-in-possession in this chapter 11 case, filed the above-identified complaints against three related defendant corporations on October 22, 1985. In each adversary proceeding Century seeks to recover monies, plus interest and costs, based on a prepetition account receivable for metal materials sold to the defendant. Century alleged jurisdiction of the bankruptcy court pursuant to 28 U.S.C. §§ 1334 and 157 and an order of the United States District Court for the District of Connecticut dated September 21, 1984 (which order refers all bankruptcy cases and proceedings to the bankruptcy judges of this district). In response, all defendants denied the claimed sums were owed and counterclaimed for substantial amounts based on allegations of breach of contract and breach of implied warranty. By way of special defense, the defendants requested dismissal of the actions on the grounds that the court lacked both personal jurisdiction and subject matter jurisdiction, and that 28 U.S.C. § 157, in authorizing the "referral" of these proceedings to a nontenured (and therefore a nonarticle III) bankruptcy judge, was invalid. The defendants demanded trial by jury.

Each defendant has now moved the court to determine that the action brought by Century is not a core proceeding, but one otherwise related to a case under Title 11. Century contends the actions are core proceedings. Core proceedings are those matters that bankruptcy judges may hear and finally determine under U.S.C. § 157(b). Under § 157(b)(3), the bankruptcy judge is charged with determining "on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11" (i.e., noncore). The bankruptcy judge hears noncore proceedings, but unless the parties consent to a final judgment therein, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court for entry of any final order or judgment. § 157(c)(1). This memorandum is limited solely to the issue raised by the three defendants' identical motions.

## II.

■ Century asserts that an action to collect an account receivable is a turnover proceeding under 11 U.S.C. § 542(b),[1] and thereby qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(E).[2] Even if the court does not so designate these actions, Century states the defendants' filing of what Century deems "unrelated" counterclaims to Century's complaints transforms the actions in their entirety to core proceedings under 28 U.S.C. §§ 157(b)(2)(B) and (C).[3] Century also claims that its actions are ones "affecting the liquidation of the assets of the estate" and therefore are core proceedings, pursuant to 28 U.S.C. § 157(b)(2)(O).[4]

The defendants' argument is founded upon constitutional principles. They claim that to allow a nontenured bankruptcy judge to hear and finally determine a state law-based claim of money due as a core proceeding would violate the requirements of article III of the U.S. Constitution as explicated in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 78 L.Ed.2d 598 (1982), and would deprive the defendants of their constitutional right to a trial by jury, U.S. Const. am. 7.

1. 11 U.S.C. § 542, entitled "Turnover of Property of the Estate", provides in pertinent part:
   (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
   (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

2. Core proceeding is not a defined term in the Bankruptcy Code, but § 157(b)(2) lists some fifteen nonexclusive examples lettered from (A) to (O). Section 157(b)(2)(E) reads:

## III.

### A.

Century's contention that an action for the collection of prepetition accounts receivable is a core proceeding relies on the heading of § 542(b), *supra* note 1, *Turnover of Property of the Estate*. Century styles its suits as "turnover proceedings", and turning to 28 U.S.C. § 157(b)(2)(E), Century concludes that each action is thereby a core proceeding. This surface reading of these statutes ignores their origin and fails to address the concerns expressed by the Supreme Court in *Northern Pipeline*.

Although the requirement that entities holding property of the estate deliver or turn over such property to the trustee is now codified in § 542, proceedings to enforce that requirement were not originally created or regulated by bankruptcy statute. The turnover proceeding was a judicial innovation, *see Maggio v. Zeitz*, 333 U.S. 56, 61, 68 S.Ct. 401, 404, 92 L.Ed. 476 (1948), used to accomplish ends already prescribed by bankruptcy statutes. *See* Bankruptcy Act of 1898 (the 1898 Act) § 2(a)(7): "Courts of bankruptcy ... [shall cause] the estates of bankrupts to be collected, reduced to money, and distributed...." The bankruptcy courts exercised this power by

Core proceedings include, but are not limited to—

(E) orders to turn over property of the estate....

3. Core proceedings include, but are not limited to—

(B) allowance or disallowance of claims against the estate ...;
(C) counterclaims by the estate against persons filing claims against the estate....

4. § 157(b)(2):
Core proceedings include, but are not limited to—

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

virtue of § 2(a)(15) of the 1898 Act, which enabled them to "[m]ake such orders, issue such process, and enter such judgments ... as may be necessary for the enforcement of [the Act]."

The turnover power, as an attribute of the courts of bankruptcy under the 1898 Act, was exercised in a summary proceeding in the bankruptcy court if the property was within the court's jurisdiction. Such jurisdiction encompassed only property within the actual or constructive possession of the court. *Harris v. Avery Brundage Co.*, 305 U.S. 160, 162-63, 59 S.Ct. 131, 132-33, 83 L.Ed. 100 (1938). Courts could deem property to be within their constructive possession even if a party other than the bankrupt held the property, if that party did not assert a substantial enough adverse claim. *Id.* at 163-64, 59 S.Ct. at 133-34. The summary turnover procedure could not be used to litigate substantial disputes concerning alleged property of the estate held adversely to the estate. The estate had to resort to a plenary suit in the appropriate district or state court. *Harrison v. Chamberlin*, 271 U.S. 191, 193-94, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926).

It is apparent, then, that a finding of actual or constructive possession was a prerequisite to exercise of the turnover power in a summary proceeding before the bankruptcy referee under the 1898 Act. The Court of Appeals in this Circuit repeatedly held that a suit such as the one brought by Century here, for enforcement of a chose in action, even if labeled a turnover proceeding, was not within the summary jurisdiction of the bankruptcy court. *In re Lehigh and Hudson River Ry. Co.*, 468 F.2d 430, 433 (2d Cir.1972). The court, speaking through Chief Judge Friendly, stated:

> [Summary jurisdiction is available to resolve] conflicting claims of the bankrupt and others to the *ownership* of such intangibles; in such cases the rule with respect to choses in action is the same as that with respect to tangible property. But ... the bankruptcy court does not have summary jurisdiction to *enforce* a chose in action against the bankrupt's obligor, even when the bankrupt's rights seem clear.

468 F.2d at 433 (emphasis in original). The enforcement of choses in action not being within bankruptcy court summary jurisdiction, it was not the subject of a summary turnover order under the 1898 Act.

A main purpose of the Bankruptcy Reform Act of 1978 (the 1978 Act) was to eliminate the extraordinary amount of litigation conducted under the 1898 Act on the summary/plenary question and extend bankruptcy jurisdiction beyond the possession limitation. *United States v. Whiting Pools*, 462 U.S. 198, 206 n. 13, 103 S.Ct. 2309, 2314 n. 13, 76 L.Ed.2d 515 (1983). Section 542(b), enacted as part of the 1978 Act, provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to" the estate. Century claims that Congress, in enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the 1984 Act), intended that debts due a debtor, such as the ones due Century from these defendants, be within the scope of § 542(b), and that payment be enforced with the lack of delay available in a core proceeding under § 157(b)(2)(E). The defendants have denied they owe any money, however, and have raised numerous and substantial questions in their counterclaims, including breaches of contact and implied warranty. Stripped of Century's turnover label, each of its actions is for breach of contract, with the defendants in turn alleging breach by Century. This cannot be the type of action Congress intended to treat as a core turnover proceeding under § 157(b)(2)(E), by referring to "orders to turn over property." The purpose of a turnover order remains that of gathering property of the estate. The enactment in 1978 of § 542, which had no statutory predecessor, was more likely part of an expansion of the definition of property of the estate, which in turn broadened the scope of property to be gathered. *Whiting Pools*, 462 U.S. at 203, 103 S.Ct. at 2312 ("[W]e view [§§ 541(a) and 542] as a definition of what is included in the es-

tate...."). Now, as before, Century's chose in action is estate property. The distinction made in *In re Lehigh and Hudson River Ry. Co., supra,* between determining ownership of a chose in action and enforcing it, again becomes relevant under the 1984 Act in deciding whether this action can properly be litigated as a core proceeding.

The 1984 Act was intended to remedy problems caused by the overly expansive jurisdiction (as found by the Supreme Court) granted to bankruptcy judges under the 1978 Act. In reducing the jurisdiction of the bankruptcy judges in the 1984 Act, Congress put in place a court system with procedural concepts bearing a certain, albeit limited, similarity to those under the 1898 Act. The identification of a proceeding as core under the present law can be said generally to correspond with a finding under the 1898 Act that a proceeding was subject to the summary jurisdiction of the bankruptcy court: in each situation a non-tenured judicial officer may enter final orders and judgments, subject only to appellate review.

When the bankruptcy court under the 1898 Act did not have summary jurisdiction over a matter, that matter could not be heard by the referee (except perhaps as a special master), absent consent of the parties. Congress was free to grant jurisdiction over plenary matters to the district court under the 1898 Act, but with limited exceptions chose not to do so. Under the present law, a noncore proceeding may be heard by a bankruptcy judge who files proposed findings of fact and conclusions of law, subject to *de novo* review by the district court on those issues to which a party has timely and specifically objected.

In both noncore proceedings under the 1984 Act and plenary matters under the 1898 Act, parties have the right of access to either an article III court or a state court. *See Northern Pipeline,* 458 U.S. at 92, 102 S.Ct. at 2882 ("[Matters outside the core of bankruptcy administration] must, absent consent of the litigants, be heard by an 'Article III court' *if* it is to be heard by any court or agency of the United States") (Burger, C.J., dissenting) (emphasis added). The summary-plenary issue has been characterized as one concerning modes of procedure,[5] but at heart, under a *Northern Pipeline* analysis, it concerned *who* would render final judgment on an issue rather than *how* that issue would be tried.[6]

The fact that bankruptcy jurisdiction under the 1984 Act, unlike that under the 1898 Act, does not depend on possession is not conclusive on a determination of the scope of the bankruptcy judge's powers under present law. *Cf. Ross v. General Plastic and Chemical Corp. (In re Auto-Pak, Inc.),* 52 B.R. 3, 5 n. 2 (Bankr. D.D.C. 1985). Under the 1898 Act, bankruptcy jurisdiction was synonymous with the ability of a non-tenured judicial officer to render final orders and judgments. Congress chose to let matters outside the core of bankruptcy administration rest on independent jurisdictional grounds.[7] The fact that Congress in 1984 chose to vest jurisdiction over matters outside the core of bankruptcy administration in the district courts does not affect the general correspondence of the 1898 and 1984 Acts with regard to the ability of a non-article III judicial officer to enter final orders and judgments. In light of this correspondence, the scope of summary jurisdiction under the 1898 Act serves at least as a helpful guideline in determin-

---

**5.** "The most frequent occasion of clashing in the field of bankruptcy jurisdiction is the question of the summary jurisdiction of the bankruptcy court versus the plenary jurisdiction of other courts. Although the word 'jurisdiction' is used, the real question concerned is what procedure is to be used." D. Cowans, *Bankruptcy Law and Practice* § 576 (2d ed.1978).

**6.** "[Bankruptcy courts] also deal in a summary way with 'matters of an administrative charac-

ter, including questions between the bankrupt and his creditors which are presented in the ordinary course of the administration of the bankrupt's estate'." *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966) (citations omitted).

**7.** With limited exceptions provided in Act of 1898 §§ 60(b), 67(e), and 70(e)(3).

ing whether Congress intended a matter to be treated as a core proceeding under the 1984 Act. *Cf., e.g., Hoffman v. Brown (In re Brown),* 56 B.R. 487, 489 (Bankr. D. Md. 1985).

Under this analysis, the reference in § 157(b)(2)(E) to an "order to turn over property of the estate" does not include an action to collect upon an account receivable, even if Century's account receivable could be included within the parameters of § 542(b).

## B.

If § 542(b) and 28 U.S.C. § 157(b)(2)(E) were interpreted otherwise and held to make debt collection actions core proceedings, the holding of *Northern Pipeline* would have to be ignored. I now turn to a consideration of that case.

In January of 1980, Northern Pipeline Construction Co. filed a reorganization petition in the U.S. Bankruptcy Court for the District of Minnesota. Two months later, Northern filed in the bankruptcy court an action against Marathon Pipe Line Co., alleging, *inter alia,* breaches of contract and warranty. Marathon filed a motion to dismiss, claiming that the 1978 Act unconstitutionally conferred on a non-article III bankruptcy judge the power to hear and determine the type of action brought by Northern. Ultimately, the Supreme Court agreed.

After concluding that the bankruptcy courts did not fit within any exception to article III requirements, the plurality stated that the wide range of powers given to bankruptcy judges under the 1978 Act impermissibly vested most, if not all, of the essential attributes of the federal judicial power in a non-article III tribunal. Concurring, Justice Rehnquist argued that the holding should be a narrow one, limited to the question presented: the constitutionality of a non-article III judge deciding North-

ern's state law-based cause of action over Marathon's objection.

The 1984 Act, and the attendant core-noncore distinction, represent Congress's attempt to comply with the *Northern Pipeline* decision.[8] Now, as under the 1978 Act, the district courts are vested with bankruptcy jurisdiction, 28 U.S.C. § 1334; however, the bankruptcy courts no longer exercise all the jurisdiction vested in the district courts. *Cf.* former 28 U.S.C. § 1471(c). Instead, the district court may refer any or all cases and proceedings to the bankruptcy court, *id.* § 157(a), established as a unit of the district court. *Id.* § 151. This reference may be revoked at any time by the district court, on its own motion or on timely motion of any party, for cause shown. *Id.* § 157(d). After reference, the 1984 Act, as noted *supra* at p. 3, limits the bankruptcy court's jurisdiction from what it was under the 1978 law in rendering final judgment, with proceedings divided into core and noncore categories.

Century claims that the safeguards inherent in the 1984 Act, *i.e.,* greater district court control and narrower bankruptcy court jurisdiction, allow the bankruptcy court to find the instant actions to be core proceedings. Characterizing *Northern Pipeline* as a decision concerned principally with the structure of the bankruptcy court system, Century heavily relies upon *Lesser v. A–Z Assoc. (In re Lion Capital Group),* 46 B.R. 850 (Bankr. S.D.N.Y. 1985), for the proposition that the 1984 change in the structure of the bankruptcy courts "greatly enhances ... the validity of enabling adjunct bankruptcy courts to determine state law causes of action." 46 Bankr. at 859.

The courts that have relied on the structure of the bankruptcy court system under the 1984 Act to find account receivable actions to be core proceedings have done so mainly on their reading of the concurring opinion authored by Justice Rehnquist. In

8. The 1984 Act is broadly modeled after the Emergency Resolution adopted by all district courts to fill the void between the effective date of *Northern Pipeline* and the enactment of the 1984 Act. Every court of appeals that considered the validity of the Emergency Resolution upheld it.

*Lion Capital Group, supra,* the court stated that:

> [I]t is clear that, under the actual holding in *Marathon,* the constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate.

*Lion Capital Group,* 46 B.R. at 856. That court's understanding of the "actual" holding of *Northern Pipeline* seems to be based upon reading Justice Rehnquist's concurrence as stating that only *peripheral* state law causes of action must be tried by article III judges. "[It] is observed that such matters [*i.e.,* actions to enforce contractual obligations of the debtor's limited partners] are hardly of the peripheral nature that [the concurrence] apparently viewed the *Marathon* proceeding to be." *Lion Capital Group,* 46 B.R. at 859.[9]

I reach the opposite conclusion: in light of the concurrence, these actions cannot be determined as core proceedings. While the plurality opinion in *Northern Pipeline* leaves ample room for speculation on what are the "essential attributes of judicial power" that must be vested only in an article III court, Justice Rehnquist favored a narrow holding. Declining to decide any broad questions on the outer limits of article III, Justice Rehnquist stated that whatever those limits may be, "[n]one of the cases has gone so far as to sanction the type of adjudication to which Marathon will be subjected against its will under the provisions of the 1978 Act." 458 U.S. at 91 (Rehnquist, J., concurring). The type of adjudication involved in this proceeding is not in any meaningful way distinguishable from the one involved in *Northern Pipeline.* I am unpersuaded that the revised bankruptcy court structure resulting from the 1984 Act allows bankruptcy courts to hear and determine, without consent, account receivable actions brought by the estate against a defendant who has not filed a claim. *Accord: Mohawk Indus. v. Robinson Indus.,* 46 B.R. 464 (D.Mass. 1985); *Pierce v. Airport Devel. Co. (In re Pierce),* 44 B.R. 601 (D. Colo.1984); *Shaford Cos., Inc. v. Curr International Coffees, Inc. (In re Shaford Cos., Inc.),* 52 B.R. 832 (Bankr. D.N.H.1985); *Nanodata Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.),* 52 B.R. 334 (Bankr.W.D.N.Y.1985); *Maislin Indus. v. C J Van Houten (In re Maislin Indus.),* 50 B.R. 943 (Bankr.E.D.Mich.1985); *Braucher v. Continental Ill. Nat'l Bank & Trust (In re Illinois-California Express, Inc.),* 50 B.R. 232 (Bankr.D.Colo. 1985); *Bokum Resources Corp. v. LILCO (In re Bokum Resources Corp.),* 49 B.R. 854 (Bankr. D.N.M.1985); *Appel v. Mainstar Oil Co. (In re B & L Oil Co.),* 46 B.R. 731 (Bankr. D. Colo.1985); *Atlas Automation, Inc. v. Jensen, Inc. (In re Atlas Automation, Inc.),* 42 B.R. 246 (Bankr. E.D. Mich.1984). *Contra: Willis v. Ryan (In re Bucyrus Grain Co.),* 56 B.R. 204 (Bankr.D. Kan.1986); *In re Wood,* 52 B.R. 513 (Bankr.N.D.Ala.1985); *Franklin Computer Corp. v. Harry Strauss & Sons, Inc. (In re Franklin Computer Corp.),* 50 B.R. 620 (Bankr.E.D.Pa.1985); *Fisher v. Insurance Co. of Pa. (In re Pied Piper Casuals),* 50 B.R. 549 (Bankr.S.D.N.Y.1985); *Brodsky v. Schnepper (In re Gross),* 48 B.R. 674 (Bankr.E.D.Pa.1985); *Baldwin-United Corp. v. Thompson (Matter of Baldwin-United Corp.),* 48 B.R. 49 (Bankr.S.D. Ohio 1985); *Lesser v. A–Z Assoc. (In re Lion Capital Group),* 46 B.R. 850 (Bankr.S.D. N.Y.1985).

## IV.

### A.

■ Century next argues that even if its actions to collect on prepetition accounts receivable would not otherwise be treated as core proceedings, the assertion of "unrelated" counterclaims by the defendants makes such treatment appropriate. Citing § 157(b)(2)(C), which designates as core

---

**9.** Neither the plurality nor the concurrence in *Northern Pipeline* uses the word "peripheral."

proceedings counterclaims by the estate against persons filing claims against the estate, Century contends that the same designation should be given a counterclaim asserted *against* a complaint brought by the estate. Century characterizes the fact that its complaint was filed first, with the defendants' counterclaims following, as a mere fortuity of timing. Century also cites § 157(b)(2)(B), which classifies allowance or disallowance of claims against the estate as core proceedings. Arguing that the defendants' counterclaims come within this provision, Century suggests that "[r]egardless of its timing, a counterclaim is, after all, a 'claim'."

I disagree with Century's contention that the defendants' counterclaims render the entire actions core proceedings. The counterclaims asserted by the defendants are not "unrelated" to Century's complaints. Bankr. R. 7013, incorporating Fed.R.Civ.P. 13, provides for counterclaims in bankruptcy. Fed.R.Civ.P. 13(a) states that "a pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." (Emphasis added.) As to what constitutes the same transaction or occurrence, the Supreme Court has held that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (meaning of "same transaction" under Equity Rule 30). *See also United States v. Heyward-Robinson Co.*, 430 F.2d 1077 (2d Cir.1970) (plaintiff sued defendant on federal contract; defendant counterclaimed on federal contract and another, non-federal, contract; court of appeals held *both* counterclaims compulsory).

In light of the flexible interpretation to be given Fed.R.Civ.P. 13(a), it is clear that the defendant's counterclaims arise out of the transaction or occurrence that is the subject matter of Century's complaints. The complaints are based on accounts receivable arising from sales of goods by Century to the defendants between June 1984 and March 1985. The counterclaims allege breach of warranty, misrepresentation, failure to deliver, and the owing of a credit balance, all based upon sales of the same type of goods by Century to the defendants during the same time period. It is clear that these counterclaims are compulsory.

I find a significant difference for jurisdictional purposes between a defendant's compulsory counterclaim to a debtor's complaint and a debtor's counterclaim to a creditor's proof of claim. There are strong arguments for the constitutionality of a non-article III judge hearing and determining claims against the estate under 28 U.S.C. § 157(b)(2)(B) and counterclaims by the estate under § 157(b)(2)(C): consent, and the possibility that such an exercise of jurisdiction does not vest the essential attributes of judicial power in a non-article III officer. Neither of these is available in the analysis of a defendant's compulsory counterclaim to a debtor's complaint.

### B.

As noted, § 157(c)(2) provides that, with the consent of the parties, bankruptcy judges may hear and determine noncore proceedings.[10] Section 157(c)(2) corresponds to provisions of the 1898 Act whereby parties could consent to the jurisdiction of the bankruptcy court. *See* 1898 Act §§ 2(a)(7), 23(b). Courts held that the filing of a proof of claim constituted "implied consent" to the exercise of summary juris-

---

**10.** In the year-and-a-half since the 1984 Act became effective, the present proceeding is the *first* one at Hartford in which all parties to an adversary proceeding based upon an account receivable did not consent to the bankruptcy court's entering final judgment. The court at Hartford, with approximately twelve hundred cases filed annually, services one-half of the State of Connecticut. It is arguable that the enhanced status of the bankruptcy court, compared to that under the 1898 Act, has minimized core/noncore litigation.

diction over certain counterclaims to the claim. The rationale behind this was expressed by the Supreme Court as follows:

> What we said in ... connection with the jurisdiction of a receivership court ... is equally applicable [in bankruptcy]:
>
> "By presenting their claims respondents subjected themselves to all the consequences that attach to an appearance...."

*Katchen v. Landy*, 382 U.S. 323, 335, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966) (citations omitted).

■ A finding of jurisdiction by implied consent is not justifiable in the present matter. It may be reasonable to find consent under §§ 157(b)(2)(C) and 157(c)(2) when a creditor files a proof of claim, and the estate objects in the form of a counterclaim. But no such justification exists when the counterclaim is filed not by the estate, but by a party sued by the estate. A defendant's filing of a compulsory counterclaim cannot in any meaningful way be deemed voluntary; if a compulsory counterclaim is not filed, the defendant is barred from bringing a later independent action on the claim. *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir.1961). For this reason, courts have held in other contexts that a defendant's assertion of a compulsory counterclaim does not constitute a waiver of objections to improper venue or lack of personal jurisdiction. *See, e.g., Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir.1967); *see also* 6 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1409, 1416 (1971 & Supp.1985) (cites *Dragor Shipping* as the "better rule"). To the extent that §§ 157(b)(2)(B) and (C) are based upon the concept of consent expressed in § 157(c)(2), I find them not applicable to this proceeding.

### C.

The treatment of claims against the estate and certain counterclaims by the estate as core proceedings under §§ 157(b)(2)(B) and (C) may be justified by the fact that the resolution of such claims is at the heart of the federal bankruptcy scheme, and, therefore, may be handled by a non-article III officer.[11] No such justification exists for treatment as a core proceeding of counterclaims *against* the estate by a party that the estate has sued.

■ It is generally accepted that bankruptcy courts may hear and determine claims against the estate, whether the claim is based upon state or federal law. This is the sort of determination that lies at the core of the federal bankruptcy power: the gathering into one forum of all claims against the debtor's estate, and the "prompt and effectual administration and settlement of [that] estate," *Katchen v. Landy*, 382 U.S. at 328, 86 S.Ct. at 472. This analysis fully supports treating claims against the estate as core proceedings under § 157(b)(2)(B). Nothing in *Northern Pipeline* calls into question the constitutionality of non-article III bankruptcy judges hearing and determining state law-based proofs of claim. The ability to hear and determine counterclaims against the estate by a party that the estate has sued, on the other hand, would vest bankruptcy judges with powers nearly as great as those found invalid in *Northern Pipeline*. A compulsory counterclaim *against* the estate does not transform into a core proceeding what otherwise would be noncore. *Mohawk Indus. v. Robinson Indus.*, 46 B.R. 464, 466 (D. Mass.1985).

In light of the foregoing discussion of the requirements of article III, I also hold that these actions are not appropriate for determination under § 157(b)(2)(O). *See*

11. "[T]he [Supreme] Court has long recognized that Congress is not barred from acting pursuant to its powers under Article I to vest decision-making authority in tribunals that lack the attributes of Article III courts.... The Court's holding in [Northern Pipeline] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.*, ⸺ U.S. ⸺, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985).

*generally Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159 (9th Cir.1986).

## V.

Upon the defendants motions, for the reasons stated above, the court determines that the actions filed by Century are not core proceedings, but are proceedings otherwise related to a case under title 11. It is

SO ORDERED.