**In the MATTER OF THAMES RIVER ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**THAMES RIVER ASSOCIATES LIMITED PARTNERSHIP, Plaintiff,**

v.

**SECURITY WINDOWS, INC., Defendant.**

**Bankruptcy No. 2–92–25020.**
**Adv. No. 2–93–2066.**

United States Bankruptcy Court,
D. Connecticut.

Oct. 12, 1993.

Theresa A. Caldarone, Chorches & Novak, P.C., Wethersfield, CT, for plaintiff-debtor.

G. Russell Stewart, III, Basilica & Stewart, New London, CT, for defendant.

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### *ISSUE*

The plaintiff-debtor in possession seeks in this proceeding to recover from the defendant-judgment creditor monies the defendant received prepetition after a levy upon a bank account maintained by the plaintiff. The plaintiff contends the bank account contained only security deposits re-

ceived from the plaintiff's tenants, the segregation of which is mandated by Connecticut statutory law. The defendant argues that even if there were a wrongful levy, the plaintiff's sole recourse is against the bank where the account is located. There being no material facts in dispute, the plaintiff has moved for summary judgment.

## II.

## BACKGROUND

The plaintiff, a limited partnership, owns and operates a residential apartment complex known as Winthrop Square Apartments in New London, Connecticut. It maintains at the Bank of Hartford (the Bank) a bank account entitled "Thames River Associates Limited Partnership for Winthrop Square Apartments–Security Reserve" (the Account) in which tenant security deposits are placed.

Security Windows, Inc., the defendant, on or about May 28, 1991, obtained a $42,000 judgment in state court against the plaintiff. On May 5, 1992, the defendant caused a property execution to be served upon the Bank which the Bank honored by debiting the Account for $34,647, which sum the defendant subsequently received.

■ The plaintiff filed its chapter 11 petition on December 23, 1992, and after the defendant rejected a demand for return of the monies taken from the Account, the plaintiff filed this adversary proceeding on March 9, 1993. The plaintiff labeled its complaint as one "For Turnover of Property," and pled that the proceeding was a core proceeding. The defendant in its answer denied the proceeding was core, but has consented to the entry of a final judgment by the court. *See* Fed.R.Bankr.P. 7012(b) (when responsive pleading states proceeding is non-core, party shall indicate whether it consents to entry of final orders or judgments by bankruptcy judge).[1]

## III.

## DISCUSSION

### A.

Connecticut General Statutes § 47a–21 governs the status of residential real estate security deposits and the landlord's duties in maintaining those funds. Under the statute, the landlord has a duty to deposit all tenants' security deposits into an escrow account in a financial institution.[2] The statute provides that the security deposit remains the tenant's property with the landlord holding a security interest securing the tenant's lease obligations.[3] The statute furthermore provides that the escrow account is not subject to attachment or execution by the landlord's creditors.[4] Recently the statute was amended to make clear that if the landlord's interest in the real estate is transferred, the escrow ac-

---

1. This court has previously ruled that an adversary proceeding to collect prepetition account receivables was substantially indistinguishable from the state-law contract action in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and, therefore, was a non-core but "otherwise related" proceeding that could not be characterized as a Code § 542 turnover proceeding. *See Century Brass Prods., Inc. v. Millard Metals Serv. Ctr., Inc. (In re Century Brass)*, 58 B.R. 838 (Bankr.D.Conn.1986). The claim stated in plaintiff's complaint is likewise not distinguishable from the claims in *Century Brass* and *Northern Pipeline*. Stripped of its turnover label and reliance on Code § 542, plaintiff's complaint states a claim for damages caused by the defendant's prepetition wrongful execution, and the court will treat it accordingly.

2. Section 47a–21(h)(1) provides:

Each landlord shall immediately deposit the entire amount of all security deposits received by him on or after October 1, 1979, from his tenants into one or more escrow accounts for such tenants in a financial institution.

Conn.Gen.Stat.Ann. § 47a–21(h)(1) (West Supp. 1993).

3. Section 47a–21(c) provides:

Any security deposit paid by a tenant shall remain the property of such tenant in which the landlord and his successor shall have a security interest....

4. Section 47a–21(a)(2) defines "escrow accounts":

"Escrow account" means any account at a financial institution which is not subject to execution by the creditors of the person in whose name such account is maintained....

count remains immune from attachment or execution by either the landlord's or the successor's creditors.[5]

It is clear that the Account the defendant executed upon was exempt from execution in satisfaction of the plaintiff's judgment debt.[6]

### B.

The defendant's initial claim is that the amendment to Conn.Gen.Stat. 47a–21(c), see note 5, supra, became effective subsequent to the defendant's levy on the Account and, thus, its prior levy was lawful. It is, however, readily evident from the cited sections of § 47a–21, see notes 2–4, supra, that all escrow accounts for security deposits had been exempt from attachment by a landlord's creditors, and the amendment explicitly (and probably unnecessarily) applied the exemption to the successor of the original landlord.

### C.

■ An action based on a judgment creditor's execution upon exempt funds states a claim for damages for wrongful execution. See, e.g., 30 Am.Jur.2d Executions § 758 (execution of "property not subject to execution, such as property exempt by statute, or property of a third person," gives rise to action for wrongful execution); 33 C.J.S. Executions § 453 (action for wrongful execution exists where levy wrongfully made "on property of the judgment debtor which is exempt"); ARC Inv. Co. v. Tiffith, 164 Cal.App.2d Supp. 853, 330 P.2d 305, 307

(1958) ("A wrongful levy is regarded as a tort; and a levy is wrongful where it is made on property of the judgment debtor which is exempt.").

■ The defendant's contention that it was not aware the funds were taken from a security deposit escrow account is irrelevant because intent or knowledge is not an element of an action for damages caused by wrongful execution on exempt property. See, e.g., 30 Am.Jur.2d § 759. The defendant's argument that the Bank is the proper defendant in this action is not persuasive. Once a judgment creditor ratifies the wrongful execution by taking possession of the funds and refusing upon demand to return them to the plaintiff, it may be sued alone without either the levying officer or any other third party being joined. Executive Sportsman's Ass'n, Inc. v. Southwest Bank & Trust Co., 436 S.W.2d 184, 185 (Tex.Civ.App.1969) ("A judgment creditor is liable for the manner in which a Sheriff executes a writ of execution if he ... ratifies the wrongful execution."); 33 C.J.S. § 456 (where execution creditor "refuses, on demand, to direct a release of property wrongfully seized, ... there is a ratification of the wrongful act which renders him equally liable with the officer"); 35 C.J.S. Exemptions § 148 (debtor may maintain action against judgment creditor alone). The defendant cites no authority for its proposition that the plaintiff's failure to name the Bank as a defendant somehow precludes the defendant's liability as the execution creditor.

5. Public Act No. 93–40, effective May 5, 1993, amends § 47a–21(c) by adding the following: A security deposit shall be exempt from attachment and execution by the creditors of the landlord or his successor and shall not be considered part of the estate of the landlord or his successor in any legal proceeding. 1993 Conn.Acts 93–40 (Reg.Sess.).

6. In Connecticut, bank executions upon the accounts of non-natural persons are governed by Conn.Gen.Stat. § 52–367a. Burchett v. Roncari, 181 Conn. 125, 127, 434 A.2d 941 (1980). According to the statute, a plaintiff may execute upon a judgment debtor's bank account by requesting that the clerk of the court issue an execution with which the serving officer makes demand on a bank. Notice to the debtor before obtaining an execution or making demand is

not required. If the bank is indeed indebted to the debtor, it must pay over funds by midnight of the following banking day. A refusal to pay over funds of the debtor is grounds for holding the bank personally liable to the judgment creditor for that amount. The statute does not provide for any procedure by which a debtor can object to the execution before the clerk issues the execution order. See 2 Edward L. Stephenson, Connecticut Civil Procedure § 215, at 915–16 (2d ed. 1971). See also Conn.Gen.Stat.Ann. § 52–350f (West Supp.1993) ("A money judgment may be enforced against any property of the judgment debtor unless the property is exempt from application to the satisfaction of the judgment under ... any ... provision of the general statutes or federal law.").

## IV.

### CONCLUSION

█ Since the facts relevant to this action are not in dispute and since the plaintiff has stated a claim upon which damages for wrongful execution may be granted as a matter of law, the plaintiff's motion for summary judgment is hereby granted. The plaintiff's pleadings and memoranda make no reference to recovery of damages beyond return of the $34,647 "plus interest" incurred as a result of the wrongful execution. *See Staub v. Anderson*, 151 Conn. 384, 388, 198 A.2d 207 (1964) (in wrongful execution case, plaintiff was entitled to possession of property wrongfully executed upon and "to recover such damages for the unlawful detention ... as he may prove"). Accordingly, judgment may enter that the plaintiff recover from the defendant the sum of $34,647 with interest from the date of demand. It is

SO ORDERED.

### JUDGMENT

This action came on for hearing before the court, Honorable Robert L. Krechevsky, Chief Bankruptcy Judge, presiding, and a motion for summary judgment having been granted, it is

ORDERED AND ADJUDGED that the plaintiff recover of the defendant the sum of $34,647 with interest thereon at the rate of 3.40 percent per annum as provided by law from the date of demand.